Filed 5/2/13  P. v. McGlothin CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B242058 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BA386573) |
| TIFFANY MCGLOTHIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick N. Wapner, Judge.  Affirmed with directions.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Connie H. Kan, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Tiffany McGlothin appeals from her conviction of first degree burglary entered upon a plea of nolo contendere. Defendant contends that the arresting officers lacked reasonable suspicion of criminal activity to justify detaining her, and that the trial court erred in denying her motion to suppress evidence seized as a result of the detention. We find no merit to defendant's contentions and affirm the judgment. However, we direct the trial court to issue a corrected abstract of judgment reflecting the restitution fine and the victim restitution order.

## BACKGROUND

### Procedural history

Defendant was charged with one count of first degree burglary in violation of Penal Code section 459.[1] The amended information specially alleged pursuant to the "Three Strikes" law and the Justice Realignment Act of 2011,[2] that defendant had suffered a prior serious or violent felony conviction or juvenile adjudication in 2009. After the trial court denied defendant's motion to suppress evidence (pursuant to section 1538.5), she withdrew her plea of not guilty and pled no contest to the charge and admitted the prior conviction allegation. On June 11, 2012, the trial court struck the prior conviction allegation on its own motion and sentenced defendant to the low term of two years in prison, with a total of 112 days of custody credits. The court also ordered defendant to pay $400 in victim restitution in addition to mandatory fines and fees, including a $200 restitution fine. Defendant filed a timely notice of appeal.

### Prosecution evidence

At the hearing on defendant's evidence suppression motion, Los Angeles Police Officer Sunny Sasajima testified that several residential burglaries had been committed in the Leimert Park neighborhood shortly before defendant's arrest in July 2011. As the senior officer for the area, Officer Sasajima had read the reports and knew that witnesses

---

[1]     All further statutory references are to the Penal Code unless indicated otherwise.

[2]     See sections 1170.12, subdivisions (a) through (d), 667, subdivisions (b) through (i), and 1170, subdivision (h).

2

had reported seeing a common modus operandi for these burglaries: a driver, often a woman, would drop off two or three suspects near the target location and then park the car and wait about one-half block or block away, maintaining communication by cell phone. About one month before defendant's arrest, Officer Sasajima and her partner Officer Beard had reviewed a surveillance video depicting recent similar activity close to the area where defendant was detained. In the video, two males could be seen alighting from a car which dropped them off and then parked and waited. Later, the suspects could be seen fleeing from the location.

On July 12, 2011, Officers Sasajima and Beard received a radio call reporting that a burglary suspect had been seen at a residence on Sutro Avenue in Leimert Park. On their way to the residence, they saw defendant seated in the driver's seat of a legally parked car, about a half block from the location. As the officers approached her in their marked police car with overhead emergency lights, defendant looked in their direction, then immediately looked down and began sending text messages on her cell phone. Because the circumstances were similar to the earlier reports, the officers decided to detain defendant. Officer Beard took defendant's cell phone and remained with her, while Officer Sasajima went on foot to the Sutro residence to investigate the burglary report.

The son of the property owner told Officer Sasajima that while he was inside the home, he heard a noise, and after calling out to his sister, heard a back window breaking. He then fled to a neighbor's home and called the police. He saw three African American men wearing dark clothing walking along the side of his house. When Officer Sasajima inspected the rear door of the house she saw that the screen door had been removed and a glass panel had been smashed. The door was open and pry marks were seen near the door jamb. There were glass shards inside and outside the house.

In the meantime, after Officer Beard advised defendant of her *Miranda* rights,[3] defendant then told him that she had dropped off "Kentrell" to commit burglaries after he

---

[3]     See *Miranda v. Arizona* (1966) 384 U.S. 436, 444-445.

had promised her a share of the booty.  When Officer Sasajima returned from investigating the house, defendant's cell phone rang.  Asked who was calling, defendant replied that it was Kentrell.  Defendant also showed the officers text messages from Kentrell.

## DISCUSSION

### I.  Suppression motion

Defendant contends that the trial court erroneously denied her motion to suppress evidence.  She contends that the evidence showed that the officers detained defendant solely on a "hunch" and lacked any reasonable suspicion that she was engaged in criminal activity.  She concludes that her detention was unlawful under the Fourth Amendment and that her statements and the evidence contained on her cell phone were "fruit of the poisonous tree"[4] which must be suppressed.

In reviewing the ruling on a suppression motion, we defer to the trial court's express and implied factual findings if supported by substantial evidence, and we independently assess whether the challenged search or seizure conforms to constitutional standards of reasonableness.  (*People v. Hughes* (2002) 27 Cal.4th 287, 327-328.)  We do not resolve conflicts in the testimony, determine the credibility of witnesses, weigh the evidence, or reject the trial court's reasonable inferences.  (*People v. Lawler* (1973) 9 Cal.3d 156, 160.)

"The law is well-established that 'in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity.  Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so:  the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement

---

[4]    *Wong Sun v. United States* (1963) 371 U.S. 471, 487-488.

by the person in question.  The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith.  [Citation.]' [Citations.]"  (*People v. Loewen* (1983) 35 Cal.3d 117, 123; citing, inter alia, *Terry v. Ohio* (1968) 392 U.S. 1, 22.)

Whether suspicion was reasonable must be determined by considering the totality of the circumstances.  (*United States v. Arvizu* (2002) 534 U.S. 266, 273-275 (*Arvizu*).  "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'  [Citations.]"  (*Id*. at p. 273, quoting *United States v. Cortez* (1981) 449 U.S. 411, 418.)

Defendant contends that although the officers had information that a burglary was in progress, they had no reason to believe that defendant was involved in the crime due to the following circumstances:  the officers had not been informed that a woman was involved; they had no description of the getaway car; and sending a text message after seeing a police car was equally consistent with innocent activity.  Defendant's argument is the "sort of divide-and-conquer analysis" precluded under the totality of the circumstances standard.  (See *United States v. Arvizu*, *supra*, 534 U.S. at p. 274.)  In fact, the circumstances also included the following:  Officer Sasajima had information that prior burglaries involved a getaway car parked a block or one-half block away, often driven by a woman who used a cell phone while waiting; and the officers had just received a radio call that a burglary was in progress one-half block from defendant's location when they saw a parked car occupied by a woman who, upon catching sight of a police car, immediately began sending a text message.

When as here, "the circumstances are 'consistent with criminal activity,' they permit -- even demand -- an investigation:  the public rightfully expects a police officer to inquire into such circumstances 'in the proper discharge of the officer's duties.'  [Citation.]  No reason appears for a contrary result simply because the circumstances are also 'consistent with lawful activity,' as may often be the case.  The possibility of an

innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal -- to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' [Citation.]" (*In re Tony C.* (1978) 21 Cal.3d 888, 894.)

We conclude that the officers drew a reasonable deduction from the facts, not a mere hunch. Indeed, defendant concedes that the officers had a reasonable suspicion that a crime was in progress, and defendant further acknowledges that the circumstances justified making contact. She contends however, that because innocently sending text messages is so common, the officers were unjustified in ordering her out of her car. Defendant's contention is made without supporting authority, and it lacks merit. So long as an initial investigative stop is justified, it is reasonable and prudent to remove the driver from the car. (See *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 109-111.) This is particularly so when officers have reason to know that a burglary is in progress nearby, as felony suspects often pose a danger to police officers. (*People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1230.) The fact that a suspect's conduct is open to an innocent interpretation does not make the circumstances less dangerous to the officers, nor does removing the suspect from the car make the investigative stop any less reasonable. (*Ibid*.)

We conclude that the officers entertained a reasonable suspicion that defendant was involved in the burglary in progress a half block away, and were thus justified in detaining defendant and removing her from her car. We also conclude the trial court did not err in denying defendant's motion to suppress evidence obtained as a result.

## II.  Abstract of judgment

Respondent asks that we order the trial court to issue an amended abstract of judgment to reflect a $400 restitution fine. She contends that although the trial court's minute order properly reflects its oral pronouncement, the abstract does not. Defendant

6

concedes that the abstract does not reflect the restitution fine and agrees that it should be amended.

We agree with respondent that the minute order is correct, but we do not agree with either party that the amount of the fine was $400. The trial court ordered defendant to pay a restitution fine of $200, and to pay direct victim restitution in the sum of $400. We thus order the trial court to modify the abstract of judgment by adding the correct amount for both the direct victim restitution and the restitution fine.

## DISPOSITION

The judgment is affirmed. The trial court is directed to issue a new abstract of judgment reflecting the court's imposition of a restitution fine in the sum of $200 and the court's order that defendant pay the sum of $400 in direct victim restitution. The trial court is further directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.*
FERNS


_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7